# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JASON WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CASE NO.  02-1177-GPM-PMF |
| | ) |
| DONALD SNYDER, JR., et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is plaintiff's motion for a temporary restraining order or a preliminary injunction (Doc. No. 89).  In this § 1983 action, plaintiff challenges the conditions of his confinement at Menard Correctional Center, alleging retaliation for his use of the prison grievance procedure and deprivation of his First Amendment right to freely exercise his religious beliefs.

Before reaching the motion, the Court addresses two initial matters.  First, plaintiff has requested ruling on this motion by a District Judge.  Because ruling will be made by Chief Judge Murphy, this request (Doc. No. 90) is moot.  Plaintiff is ADVISED that Chief Judge Murphy will conduct a *de novo* review if objections are filed, as explained in the Notice attached to this report.

Second, plaintiff requested leave to submit a group of exhibits on December 28, 2006.  That motion was denied without prejudice to plaintiff's right to submit the exhibits at the appropriate time.  Because plaintiff may have offered this group of exhibits in support of his request for a TRO or preliminary injunction, the exhibits submitted on December 28, 2006, have been considered.

Williams is entitled to a TRO or preliminary injunction if he shows that he has some

likelihood of success on the merits of his claims, if he does not have an adequate remedy at law, and if he will suffer irreparable harm if the injunction is not granted. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 313-314 (7th Cir. 1994). Injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm, and be the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2).

Plaintiff is a sincere follower of Rastafarian religious and cultural beliefs. He exercises those beliefs by refusing to cut, comb, brush, or apply chemicals to his hair, which naturally locks up in a style known as dreadlocks. During his confinement at Menard Correctional Center, plaintiff was repeatedly notified that his hairstyle presented a safety or security risk or a sanitation problem. He was issued multiple direct orders to abide by the facility's grooming policy by changing his hairstyle, and barber services were offered. When plaintiff refused to change his hairstyle, he received disciplinary reports accusing him of refusing to obey direct orders. Discipline was imposed, including loss of good time, reassignment to the prison's segregation unit, and transfer. Plaintiff filed many grievances, some of which were never processed. After he filed grievances, he received disciplinary reports accusing him of refusing to take a tuberculosis test. At times, he was assigned to share a cell with combative, potentially dangerous cell-mates.

Inmate serving disciplinary time in the segregation unit must normally be searched before they leave their cells in order to receive visits, use the services at the health care unit, inspect personal property, take showers, or participate in outside recreation. Segregation inmates are escorted by a correctional officer while their hands are restrained behind their backs.

At various times, plaintiff has been warned that his dreadlocks would be cut involuntarily. In August, 2002, defendant Walls sent correspondence to an attorney in Chicago, Illinois, explaining

that certain hairstyles are considered a security risk because they prohibit staff from conducting a safe, thorough, and complete search of the inmate.

In September, 2002, plaintiff prepared his pleading in this litigation and requested copies. Subsequently, plaintiff was notified that his hairstyle presented a safety and security risk due to staff not being able to properly search his hair. He was also informed that his dreadlocks would be cut involuntarily. He was issued disciplinary reports, based on his refusal to obey direct orders to change his hairstyle or allow a barber to cut his dreadlocks. Although plaintiff declined to change his hairstyle, he was escorted from the segregation unit to a different part of the prison for purposes of inspecting his personal property on two occasions. He was also escorted to take showers between January and March, 2002.

Plaintiff filed this litigation on November 25, 2002. On that date, he received additional disciplinary reports for disobeying direct orders to cut his dreadlocks. Defendant Spiller and others informed plaintiff that his dreadlocks would be cut involuntarily.

In 2003, plaintiff was transferred to the Cook County Jail and was later housed at Stateville Correctional Center. He subsequently returned to Menard Correctional Center.

On three occasions, plaintiff's dreadlocks have been cut involuntarily. Plaintiff does not intend to change his hairstyle.

As a result of the multiple disciplinary proceedings, plaintiff has been confined in the segregation unit for a lengthy period of time. His out-of-cell movements have been severely restricted.

Plaintiff seeks an order prohibiting the defendants and all persons acting in concert with them from engaging in any form of religious or cultural retaliation, intimidation or discrimination,

including forcibly cutting his hair.  He also seeks an order prohibiting the defendants from issuing false disciplinary reports or tampering with his mail.  He also seeks assignment to a single-man cell and a transfer to a medium security facility; A-grade status; expungement of disciplinary records; removal from segregation status; unrestricted access to his legal property; and regular access to visitors, law library services, adjustment committee hearings, prison review board hearings, showers, outdoor exercise, medical treatment, and dental treatment.  He also seeks an order requiring the defendants to answer his grievances and separate him from inmates he identifies as enemies and prohibiting them from exposing him to dangerous housing situations.

Most of the defendants have appeared in this action and served a response.[1]  They argue that this Court lacks jurisdiction to award injunctive relief in the absence of an ongoing violation of federal law.  They also argue that plaintiff has not demonstrated any likelihood of success on the merits of his claims.  Finally, the defendants argue that any hardship suffered by plaintiff is overcome by a greater hardship if the judgment of prison officials regarding the nature of a security risk is overturned

**Retaliation**.  An act performed in retaliation for the exercise of a constitutionally protected right will subject the actor to liability even where the act, if taken for a different reason, would have been proper.  *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir. 1978).  A claim of retaliation succeeds upon proof that constitutionally protected conduct was a motivating factor for the defendant's offensive behavior.  *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996); *McDonald v. Hall*, 610 F.2d 16, 18-19 (1st Cir. 1979).

Plaintiff has shown that he prepared and filed grievances and that several defendants subsequently prepared disciplinary reports accusing him of refusing to obey direct orders to conform

---

[1] Returns showing service on the remaining defendants have not been filed with the Clerk.

his hairstyle to a grooming policy. Suspicious timing is normally insufficient to show a link between a grievance and disciplinary action. *See Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985)(six-day lapse between protected conduct and purported retaliatory conduct does not support an inference of retaliation). There is little evidence linking decisions to prepare disciplinary reports with efforts to evaluate or process plaintiff's grievances, while there is considerable evidence linking the disciplinary reports to plaintiff's refusal to obey direct orders. Plaintiff has not shown a likelihood of success on his retaliation claim. Moreover, it is rather clear from the materials presented that disciplinary reports have not interfered with plaintiff's use of the administrative remedy process (Doc. No. 88). Hence, plaintiff does not face irreparable harm on this claim.

**Free Exercise**. Under the Supreme Court's holding in *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987), restrictions that infringe on an inmate's exercise of his religion will be upheld if they are reasonably related to a legitimate penological interest. This standard was implemented "to permit prison administrators to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). Four factors guide the balancing approach: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether alternative means of exercising the constitutional right remain open to the inmate; (3) the impact accommodation of the constitutional right will have on guards and other inmates, as well as on prison resources generally; and (4) whether an alternative exists that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests. *Turner v. Safley*, 482 U.S. 78, 88-91 (1987).

There is a logical connection between a policy prohibiting dreadlocks in prison with the goal of maintaining prison security, which is a legitimate governmental interest. *Pell v. Procunier*, 417

U.S. 817, 823 (1974). The record is silent regarding plaintiff's ability to practice other aspects of his religious beliefs. The impact of accommodation on guards and other inmates is disputed. Plaintiff believes his dreadlocks can be searched; the defendants believe a search would be neither safe nor effective. There may be an alternative approach using technology to ensure that plaintiff's dreadlocks are free of contraband each time he leaves his cell; however the availability of such an alternative has not been shown.

In sum, the materials submitted do not permit a finding that the defendants adopted an irrational solution to an anticipated security problem. Furthermore, the Court finds no solid authority supporting an inmate's right to exercise religious beliefs by wearing a particular hairstyle. Rather, free exercise challenges to prison grooming regulations have been widely rejected. *See Reed v. Faulkner* 842 F.2d 960, 962 (7th Cir. 1988); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995); *Henderson v. Terhune*, 379 F.3d 709, 713-15(9th Cir. 2004); *Wilson v. Schillinger*, 761 F.2d 921, 925 (3rd. Cir. 1985). Moreover, the relief requested by plaintiff is extremely broad and exceeds the standard set forth in Title 18 U.S.C. § 3626(a)(2).

IT IS RECOMMENDED that plaintiff's motion for TRO and/or preliminary injunctive relief (Doc. No. 89) be DENIED and that plaintiff's request for ruling on that motion by a District Judge (Doc. No. 90) be declared moot.

**SUBMITTED:  January 30, 2007  .**

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE**